

# NUMBER 13-24-00181-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

---

## IN THE ESTATE OF GEORGIA GAYLE ARNOLD, DECEASED

---

### ON APPEAL FROM THE COUNTY COURT AT LAW NO. 4
### OF NUECES COUNTY, TEXAS

---

## MEMORANDUM OPINION

**Before Chief Justice Tijerina and Justices West and Cron**
**Memorandum Opinion by Justice West**

Appellant Donna M. Shook challenges two trial court orders entered in favor of appellee Michael W. Arnold: the "Order on [Arnold's] Third Amended Motion for Contempt for Violation of Court Order and Motion for Sanctions" and the "Order Confirming Finality of Judgment." By six issues which we consolidate as four, Shook argues that: (1)–(2) the trial court did not have jurisdiction to hear Arnold's application for heirship and its subsequent orders were void; (3) alternatively, if the trial court did have jurisdiction, the trial court abused its discretion when it sanctioned Shook and ordered her to pay $60,000

in attorney's fees; and (4) the trial court erred when it issued the "Order Confirming Finality of Judgment," and her notice of appeal was timely filed.

We reject Shook's argument that the trial court lacked jurisdiction over Arnold's heirship proceeding. However, we hold that the trial court abused its discretion when it sanctioned Shook and awarded Arnold attorney's fees because the trial court based the award on an error of law. We also hold the trial court abused its discretion when it issued the "Order Confirming Finality of Judgment," and Shook's notice of appeal was timely filed. Accordingly, we reverse and render the "Order on [Arnold's] Third Amended Motion for Contempt for Violation of Court Order and Motion for Sanctions," and we vacate the "Order Confirming Finality of Judgment."

## I.   BACKGROUND

Georgia Gayle Arnold died on April 3, 2021, and left a will and a codicil to that will. On July 8, 2021, Arnold, Georgia's nephew, filed an application to determine heirship and an application for letters of independent administration. In a separate cause, Shook, the trustee of the Georgia G. Arnold Living Trust, filed an application for the probate of Georgia's will and codicil and issuance of letters testamentary.[1] Shook filed a motion to consolidate the two actions, and the causes were consolidated. Later in the proceedings, Arnold filed a contest to Georgia's will.

Arnold filed a subpoena for production of documents. The subpoena commanded Shook to produce and deliver a "copy of the Georgia G. Arnold Living Trust identified in" Georgia's will and "copies of all 'Memorandum of Distribution of Personal Property' signed and dated by Georgia." Shook filed an objection to the subpoena and argued, among

---

[1] No copy of Donna M. Shook's application to probate Georgia's will appears in the record; however, references to the document appear in the record and neither party disputes that Shook filed the application.

2

other issues, that the discovery request was outside the scope of permissible discovery because the trust was irrelevant to Arnold's heirship proceeding. Arnold filed a motion to compel compliance with the subpoena, which the trial court granted.

Shook filed a motion to reconsider and provided a copy of the trust to the trial court for in-camera review. In the motion, Shook contended that states have long recognized and protected "Trust Privacy," and because Arnold was not a beneficiary under the trust, Shook was under no obligation to produce it for his review. Shook cited Texas Property Code § 113.151(a), which provides that a trust beneficiary "may request the trustee to deliver to each beneficiary of the trust a written statement of accounts covering all transactions since the last accounting or since the creation of the trust, whichever is later." TEX. PROP. CODE § 113.151(a). She argued that the statute references trust privacy by only granting "trust beneficiaries the right to demand an accounting from a trustee." Shook also cited a Cornell Law Review article titled, "Trust Privacy":

> Wills—and any trusts contained therein—are public record, available to beneficiaries, heirs, thieves, reporters, and "inquiring minds" alike. "Will-like" revocable trusts, including those that continue for decades after the settlor's death, are private. Indeed, in most states, even current beneficiaries of a revocable trust cannot view the full trust document that defines their rights and interests.

Frances H. Foster, *Trust Privacy*, 93 CORNELL L. REV. 555, 557 (2008) (internal footnotes omitted).

At the hearing on the motion, Shook's counsel argued that Georgia intended that the details of the trust and the identities of the individuals receiving under the trust remain confidential. While the trust did not include any kind of confidentiality clause, he argued that "[e]state planners and financial advisors all across the country typically will advise clients that if they intend to exclude someone from their will" they should utilize a trust "for

3

privacy reasons," and "there is a common law presumption that trusts are to be confidential." Counsel also stated that "all of the details of how this trust operates and so forth, which could be something that exists for years or decades forward from this date" were not relevant to the case at hand. The trial court responded that while it would not allow a stranger to look at the trust documents, Arnold was a beneficiary under the original trust from 2011, and for that reason, it did not want to deny Arnold copies of the current trust documents.

The trial court denied Shook's motion. Arnold's motion to compel was amended, and the trial court signed the "Second Amended Order on [Arnold's] Motion to Compel Compliance with Subpoena" on November 10, 2021. Shook challenged the order and filed a petition for writ of mandamus in this Court and the Texas Supreme Court, generally urging the same arguments regarding trust privacy above. The writs in both courts were later denied. During this time, Arnold filed motions for contempt and sanctions against Shook for violating the trial court's order to compel compliance with his subpoena.

On September 23, 2022, Arnold filed a "Third Amended Motion for Contempt for Violation of Court Order and Motion for Sanctions." Arnold requested that Shook be held in contempt and "that the Court impose monetary sanctions on a daily basis . . . for each day that [Shook] failed to comply with the Court's order," except the days in which Shook's mandamus was pending in the appellate courts. He separately requested $60,212.97 in attorney's fees and expenses.

At the hearing on the motion, the parties confirmed that Shook had produced the trust documents to Arnold's counsel prior to the hearing. Nevertheless, Arnold's counsel requested that the trial court find Shook in contempt and order sanctions. He specifically

argued that he was entitled to $60,000 in attorney's fees because Shook's efforts to obtain mandamus relief were "unjustifiable":

> Your Honor, the basis for the award of attorney's fees to [Arnold] is that this whole argument by [Shook] that there's such a thing as trust privacy, which exempts the trust documents from discovery, is absolutely specious. And it's been found to be inapplicable by four successive appellate decisions rendered in this case[2]. . . . Well, the Courts found that their appeals were unjustified, and they are unjustifiable because there's no such thing as trust privacy under the laws of the [S]tate of Texas.

The trial court replied that it would not award the "per day rate" or "total" sanctions as Arnold requested in the motion. However, the trial court stated that it would grant Arnold's counsel's request for the attorney's fees because:

> I don't think there was a good faith basis for resisting this discovery. Just coming up with a theory that's not supported by Texas law, you know—well, let's put it this way, when you decide to take that through the appellate process, you're taking your chances, and this is the consequence for that decision.

Shook's counsel responded that Arnold had not pleaded that the appeals were "frivolous," and therefore, he was not properly noticed for such argument. Shook's counsel stated that the mandamus actions were not "baseless" and requested that the trial court hold a hearing on whether the mandamus actions he filed were frivolous. The trial court denied the request.

The trial court entered the "Order on [Arnold's] Third Amended Motion for Contempt for Violation of Court Order and Motion for Sanctions" on October 4, 2022. The order held Shook in contempt of the trial court's order "dated November 10, 2021, ordering

---

[2] Arnold's counsel appears to be referring to Shook's petition for writ of mandamus, motion for rehearing, and motion for en banc consideration filed in this Court, and her petition for writ of mandamus filed in the Texas Supreme Court.

[Shook] to produce to counsel for [Arnold's counsel]" the requisite trust documents and awarded $60,000 in attorney's fees payable to Arnold's counsel.

The parties continued discovery and filed various motions in the case from 2022 to 2024. Pertinent here, on February 14, 2024, Arnold filed a "Motion to Confirm Finality of Judgment," which requested that the trial court confirm that the "Order on [Arnold's] Third Amended Motion for Contempt for Violation of Court Order and Motion for Sanctions" was final and appealable when it was entered on October 4, 2022. Essentially, Arnold contended that the trial court's plenary power had expired, and it was too late for Shook to appeal the order. Shook filed a response. The trial court granted Arnold's motion and entered the "Order Confirming Finality of Judgment." That same day, Arnold nonsuited his claims against Shook. This appeal followed.

## II.     JURISDICTION

By her first two issues, Shook argues that the trial court lacked subject matter jurisdiction to hear Arnold's application to determine heirship, and therefore, it had no authority to grant Arnold's motion to compel compliance with the subpoena or the "Order on [Arnold's] Third Amended Motion for Contempt for Violation of Court Order and Motion for Sanctions."

Shook does not contend that the trial court had original probate jurisdiction over the proceedings. *See* TEX. GOV'T CODE §§ 25.0003(a), (d), 25.1801, 25.1802; TEX. EST. CODE § 32.002. Instead, Shook relies on Texas Estates Code § 202.002, which states that "[a] court may conduct a proceeding to declare heirship when":

> (1)     a person dies intestate owning or entitled to property in this state and there has been no administration in this state of the person's estate;
>
> (2)     *there has been a will probated in this state or elsewhere or an administration in this state of a decedent's estate, but:*

6

(A)　*property in this state was omitted from the will or administration; or*

　　　(B)　*no final disposition of property in this state has been made in the administration*; or

　(3)　it is necessary for the trustee of a trust holding assets for the benefit of a decedent to determine the heirs of the decedent.

TEX. EST. CODE § 202.002 (emphasis added).

Shook contends that, per § 202.002, "intestacy ha[s] to be established before a court c[an] exercise jurisdiction to declare heirship." She argues that because (1) Georgia did not die intestate, (2) Georgia's will and codicil disposed of all of her property, and (3) her will and codicil had been filed for probate, the trial court did not have the authority or jurisdiction to hear Arnold's application to determine heirship.

Despite Shook's argument, the statute does not require a person to die intestate for the trial court to conduct a proceeding to determine heirship. *See id.* at § 202.002(2). Instead, the statute allows the trial court to hear an heirship claim, even if a will exists, if there is a pending probate proceeding and "property in this state was omitted from the will or administration" or "no final disposition of property in this state has been made in the administration of the estate." *Id.*; *see Frost Nat'l Bank v. Fernandez*, 315 S.W.3d 494, 506–07 (Tex. 2010) (finding that "section 48 of the Probate Code," now codified in part under Texas Estates Code § 202.002, allows the probate court to exercise jurisdiction over an heirship proceeding even if the decedent left a will and the will disposes of all the decedent's property, if, before bringing the heirship claim, a probate proceeding is already pending in that court); *see also Est. of Whittenburg*, No. 07-21-00137-CV, 2022 WL 1123202, at *2 (Tex. App.—Amarillo Apr. 13, 2022, pet. denied) ("[A]n heirship proceeding could be had if the decedent had a will and 'no final disposition of property in

7

this state *has been made in the administration*.'" (quoting TEX. EST. CODE § 202.002(2)(B))).

In this case, Arnold filed his application for heirship, and Shook filed the application for probate a few days later. There was a pending probate proceeding in the trial court, and no final disposition of property had been made; therefore, the trial court had jurisdiction to hear Arnold's application for heirship. *See* TEX. EST. CODE § 202.002(2)(B); *cf. Frost Nat'l Bank*, 315 S.W.3d at 507 (holding that the probate court was not authorized to determine heirship because the decedent "left a will that disposed of all his property," and "his estate was fully administered and closed" by the time appellee filed her application for heirship); *see also Est. of Whittenburg*, 2022 WL 1123202, at *2. We overrule Shook's first issue. Because Shook's second issue hinges on success of her first issue, we likewise overrule her second issue.

### III. SANCTIONS

By her third issue, Shook argues that the trial court abused its discretion when it granted Arnold's motion for contempt and sanctions and ordered her to pay $60,000 in attorney's fees.

### A. Standard of Review & Applicable Law

"We review a trial court's sanctions order for abuse of discretion." *Brewer v. Lennox Hearth Prods., LLC*, 601 S.W.3d 704, 717 (Tex. 2020). "A trial court abuses its discretion if it acts without reference to guiding rules and principles such that the ruling is arbitrary or unreasonable." *Id.* A trial court's error of law or erroneous application of law to facts is always an abuse of discretion. *In re Illinois Nat'l Ins.*, 685 S.W.3d 826, 835 (Tex. 2024) (orig. proceeding) (citing *In re Facebook, Inc.*, 625 S.W.3d 80, 86 (Tex. 2021) (orig.

8

proceeding)). To determine whether the trial court abused its discretion in issuing a sanction's order, we "review the entire record independently," and "view conflicting evidence favorably to the court's decision." *Brewer*, 601 S.W.3d at 717.

## B. Analysis

When deciding to sanction Shook and award the attorney's fees, the trial court stated, "I don't think there was a good faith basis for resisting this discovery. Just coming up with a theory that's not supported by Texas law, . . . when you decide to take that through the appellate process, you're taking your chances, and this is the consequence for that decision." In other words, the trial court found that Shook abused the discovery process because her mandamus proceedings were without merit. Shook argues that this conclusion was an abuse of discretion. Specifically, she contends that the trial court's "legal conclusion that trust privacy does not exist in Texas and that there was no good faith basis for resisting turning over confidential trust documents is an error of law."

Shook points to the concurring opinion in *Ackers v. Comerica Bank & Tr., N.A.* for support. 654 S.W.3d 750, 752 (Tex. 2022) (Busby, J., concurring in denial of petition for review). In that case, the Texas Supreme Court denied a petition for review involving "a dispute over whether certain individuals are contingent remainder beneficiaries of a trust, and the issue presented is whether the dispute is ripe for judicial resolution." *Id.* at 750. The concurrence states:

> A trustee owes fiduciary duties to the trust. *See Thigpen v. Locke*, 363 S.W.2d 247, 253 (Tex. 1962). One such duty is the duty of loyalty, which obligates the trustee to preserve the confidentiality of trust information. *See, e.g.*, RESTATEMENT (THIRD) OF TRUSTS § 78 cmt. i. To facilitate a trustee's compliance with its duties of disclosure as well as confidentiality, it is important that both trustees and beneficiaries have access to the judicial forum provided by the Legislature for resolving any disputes regarding present rights.

9

*Id.* at 752. Shook contends that this language "substantiates the existence of the fiduciary duty that [Shook] was trying to fulfill, the importance of trustees' access to the courts to resolve disputes on these matters, and the reasonable and justifiable nature of her actions." Shook acknowledges that *Ackers* is not binding authority, and the case was handed down after the trial court entered the "Order on [Arnold's] Third Amended Motion for Contempt for Violation of Court Order and Motion for Sanctions." While neither the trial court nor the attorneys had the benefit of *Ackers* when the parties litigated the motion to compel compliance with the subpoena, we find it persuasive that Shook's argument was not frivolous.

Further, the trial court based its findings of contempt and sanctions on the fact that Shook's writs of mandamus in both this Court and the supreme court were denied. However, the denials made no comment on the merits of Shook's argument about the existence of "trust privacy." *See In re AIU Ins.*, 148 S.W.3d 109, 119 (Tex. 2004) (orig. proceeding) (noting that "failure to grant a petition for writ of mandamus is not an adjudication of, nor even a comment on, the merits of a case in any respect, including whether mandamus relief was available").

Moreover, a trustee generally only owes duties to the trust's beneficiaries. *See* TEX. PROP. CODE §§ 117.003, .007 (codifying the trustee's duty of loyalty and stating that "[a] trustee shall invest and manage the trust assets solely in the interest of the beneficiaries"); *Ditta v. Conte*, 298 S.W.3d 187, 191 (Tex. 2009) (generally stating that trustees "handle trust property solely for the beneficiaries' benefit"); *Herschbach v. City of Corpus Christi*, 883 S.W.2d 720, 735 (Tex. App.—Corpus Christi–Edinburg 1994, writ denied) ("A trustee owes a trust beneficiary an unwavering duty of good faith, fair dealing,

10

loyalty and fidelity over the trust's affairs and its corpus."); *Healey v. Healey*, 529 S.W.3d 124, 135 (Tex. App.—Tyler 2017, pet. denied) ("[A] fiduciary relationship exists between a trustee and the trust beneficiary, and the trustee must not breach or violate this relationship."); *Trostle v. Trostle*, 77 S.W.3d 908, 914 (Tex. App.—Amarillo 2002, no pet.); *Hoenig v. Tex. Com. Bank, N.A.*, 939 S.W.2d 656, 661 (Tex. App.—San Antonio 1996, no writ).

Per the trial court's in-camera review of the trust, Arnold was removed as a beneficiary when the trust was amended in 2017. Thus, Arnold was never a beneficiary to the trust during the pendency of this case, and Shook generally was not required to disclose the trust information to him. *See* TEX. PROP. CODE §§ 117.003, .007; *Ditta*, 298 S.W.3d at 191; *Herschbach*, 883 S.W.2d at 735; *see also* RESTATEMENT (THIRD) OF TRUSTS § 78 cmt. i. ("Incident to the duty of loyalty, but necessarily more flexible in its application, is the trustee's duty to preserve the confidentiality and privacy of trust information from disclosure to third persons, except as required by law . . . or as necessary or appropriate to proper administration of the trust."); *Ackers*, 654 S.W.3d at 752.

Accordingly, we find that there was at least some legal authority to support Shook's resistance to disclosing the trust information to Arnold and that Shook was not, as the trial court concluded, "just coming up with a theory" unsupported by Texas law. *See* TEX. PROP. CODE §§ 117.003, .007; *Ditta*, 298 S.W.3d at 191; *Herschbach*, 883 S.W.2d at 735; *Healey*, 529 S.W.3d at 135; *Trostle*, 77 S.W.3d at 914; *Hoenig*, 939 S.W.2d at 661; *see also* RESTATEMENT (THIRD) OF TRUSTS § 78 cmt. I; *Ackers*, 654 S.W.3d at 752. And because the trial court also based the award of attorney's fees on the denials of Shook's mandamus proceedings, which did not comment on the merits of her arguments, we hold

that the trial court abused its discretion when it awarded attorney's fees against Shook. *See In re AIU Ins.*, 148 S.W.3d at 119. We sustain Shook's third issue.[3]

## IV. TIMELY NOTICE OF APPEAL

By her last issue, Shook argues that the trial court abused its discretion when it signed and granted the "Order Confirming Finality of Judgment" because the "Order on [Arnold's] Third Amended Motion for Contempt for Violation of Court Order and Motion for Sanctions" was not final and appealable when it was entered on October 4, 2022. In other words, Shook contends her notice of appeal was timely filed. We agree.

"Generally, appeals may be taken only from final judgments." *De Ayala v. Mackie*, 193 S.W.3d 575, 578 (Tex. 2006) (citing *Lehmann v. Har–Con Corp.*, 39 S.W.3d 191, 195 (Tex. 2001)). "Probate proceedings are an exception to the 'one final judgment' rule; in such cases, 'multiple judgments final for purposes of appeal can be rendered on certain discrete issues.'" *Id.* (quoting *Lehmann*, 39 S.W.3d at 192); *Matter of Guardianship of Jones*, 629 S.W.3d 921, 924 (Tex. 2021). To determine whether an interlocutory order in a probate proceeding is appealable, "we first give controlling effect to an express statute declaring the phase of the probate proceeding to be final and appealable." *In Guardianship of Macer*, 558 S.W.3d 222, 226 (Tex. App.—Houston [14th Dist.] 2018, no pet.) (citing *De Ayala*, 193 S.W.3d at 578). "If no express statute controls, a probate court order is final and appealable only if it 'dispose[s] of all parties or issues in a particular phase of the proceedings.'" *Id.* (quoting *De Ayala*, 193 S.W.3d at 579). An order that "does

---

[3] Shook also argues that the trial court abused its discretion when it awarded the attorney's fees because "other circumstances make the award unjust" under Texas Rule of Civil Procedure 215.2(b)(8) and the award was not conditioned "on the outcome of her appellate challenge to the underlying order to comply with a subpoena for confidential trust documents." Because we sustain this issue in her favor, we decline to address her remaining arguments. *See* TEX. R. APP. P. 47.1.

not end a phase of the proceedings, but sets the stage for the resolution of all proceedings," is interlocutory and not appealable. *See De Ayala*, 193 S.W.3d at 579.

There is no statute dictating when a sanctions order is final and appealable during a particular phase of a probate proceeding. *See In Guardianship of Macer*, 558 S.W.3d at 226. The sanctions order itself does not state that it is final and appealable or that it disposes of all parties or issues in that phase of the proceedings. *See De Ayala*, 193 S.W.3d at 579; *Guardianship of Macer*, 558 S.W.3d at 226. Further, an order for sanctions is generally not appealable until the final judgment is issued. *See* TEX. R. CIV. P. 215.3 (stating that a sanction order for abusing the discovery process "shall be subject to review on appeal from the final judgment"); *H.E. Butt Grocery Co. v. Currier*, 885 S.W.2d 175, 177 (Tex. App.—Corpus Christi–Edinburg 1994, no writ) ("Discovery sanctions are not appealable until the trial court renders a final judgment."); *McCain v. Lanier*, 703 S.W.3d 150, 154 (Tex. App.—Houston [1st Dist.] 2023), *review granted, judgment vacated, and remanded by agreement*, No. 24-0108, 2024 WL 2237732 (Tex. May 13, 2024) ("Neither an order imposing sanctions nor an order granting special exceptions is an appealable interlocutory order."); *see also Kamel v. Advocare Int'l, L.P.*, No. 05-15-01295-CV, 2016 WL 836809, at *1 (Tex. App.—Dallas Mar. 4, 2016, no pet.) ("A sanctions order that does not dispose of all the parties and issues is neither an appealable final judgment nor an appealable interlocutory order."). We find no authority establishing that a motion for contempt or sanctions in a probate proceeding can be final and appealable before a final judgment is issued.

Accordingly, we hold that the trial court abused its discretion when it entered the "Order Confirming Finality of Judgment." *See In re Illinois Nat'l Ins.*, 685 S.W.3d at 835;

*Brewer*, 601 S.W.3d at 717. The "Order on [Arnold's] Third Amended Motion for Contempt for Violation of Court Order and Motion for Sanctions" was not final and appealable until the trial court granted Arnold's nonsuit on February 29, 2024. *See* TEX. R. CIV. P. 215.3; *De Ayala*, 193 S.W.3d at 579; *McCain*, 703 S.W.3d at 154; *Guardianship of Macer*, 558 S.W.3d at 226. Shook's notice of appeal, filed on March 13, 2024, was thus timely. *See* TEX. R. APP. P. 26.1. We sustain Shook's last issue.

## V.   CONCLUSION

We vacate the "Order Confirming Finality of Judgment." We reverse the "Order on [Arnold's] Third Amended Motion for Contempt for Violation of Court Order and Motion for Sanctions" and render that Arnold take nothing by way of attorney's fees.

JON WEST
Justice

Delivered and filed on the
15th day of January, 2026.

14